UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

LPCIMINELLI INTERESTS, INC.,

                Plaintiff,

      -vs-                                                    09-CV-274-JTC

UNITED STATES OF AMERICA,[1]

                Defendant.

---

APPEARANCES:        HODGSON RUSS LLP (DANIEL C. OLIVERIO, ESQ., and ROBERT J. FLUSKEY, JR., ESQ., OF COUNSEL), Buffalo, New York, for Plaintiff.

                                UNITED STATES DEPARTMENT OF JUSTICE, TAX DIVISION (LISA L. BELLAMY, ESQ., and STEPHEN T. LYONS, ESQ., OF COUNSEL), Washington, D.C., for Defendant.

## **MEMORANDUM OF DECISION**

In this action, plaintiff LPCiminelli Interests, Inc. ("LPCiminelli") seeks a refund of approximately $1.2 million in tax paid for the year 2004 which it claims was incorrectly assessed by the Internal Revenue Service ("IRS") on income arising from a purported cancellation of the indebtedness of an inactive wholly-owned subsidiary. At the conclusion of discovery, and following an unsuccessful attempt at mediation, the parties requested a bench trial to resolve certain factual disputes, and the court set a schedule for trial and final pretrial submissions. In accordance with that schedule, the parties submitted a "Proposed

---

[1]Plaintiff also named as defendants the United States Internal Revenue Service ("IRS") and Commissioner of the IRS Douglas Shulman. As provided in 26 U.S.C. §7422(f)(1), a civil action for tax refund "may be maintained only against the United States and not against any officer or employee of the United States (or former officer or employee) or his personal representative." Accordingly, the IRS and Commissioner Shulman are dismissed from the case.

Stipulation of Facts" (Item 37), followed by pretrial statements and lists of anticipated witnesses and exhibits (Items 41-44). The government also filed a motion *in limine* to preclude certain witnesses from giving testimony at trial (Item 48).[2]

Subsequently, the parties submitted a "Trial Record Stipulation" reflecting their mutual agreement to stipulate into evidence a complete trial record in lieu of a live trial. Item 57. The stipulated record consists of the prior Stipulation of Facts ("SF"), along with documentary exhibits and deposition testimony submitted to the court in three bound "Volumes." Volume I contains Trial Exhibits ("TE") 1-19; Volume II contains excerpts from the deposition transcripts of James Sciarrino and Louis Ciminelli;[3] and Volume III contains Trial Exhibits 20-26 and excerpts from the deposition transcript of IRS agent David M. Throm. The parties have stipulated that the evidence contained in Volumes I and II is admissible and part of the trial record. The evidence contained in Volume III is subject to the government's pending motion *in limine*, discussed at further length below.

The parties have also filed proposed findings of fact and conclusions of law (Items 60-61), responses (Items 63, 64), and replies (Items 67, 69, 70), and oral argument was heard by the court on September 26, 2012. The following constitutes the court's findings

---

[2]The government also filed a motion pursuant to Rule 15(a)(2) of the Federal Rules of Civil Procedure for leave to amend the answer to assert additional affirmative defenses based on the "tax benefit doctrine" and the "duty of consistency" (*see* Items 44, 45). The government has subsequently represented to the court that it does not intend to rely on the tax benefit doctrine (*see* Item 60, fn. 7), and that reliance on the duty of consistency has become unnecessary based on admissions made in plaintiff's Proposed Findings of Fact and Conclusions of Law (*see* Item 62, p. 2). Accordingly, the government's motion to amend the answer is denied as moot.

[3]Mr. Sciarrino, an accountant who has performed work for plaintiff LPCiminelli Interests, Inc., was deposed in connection with this matter on November 16, 2009. Mr. Ciminelli, the President of LPCiminelli Interests, Inc., was not deposed in connection with this matter; his deposition transcript submitted here as part of Volume II is from Mr. Ciminelli's Rule 30(b)(6) deposition taken on November 8, 2001, in *Republic Refrigeration, Inc. V. BI-LO, LLC, et al.*, an unrelated action in the South Carolina Court of Common Pleas.

and conclusions based on the stipulated trial record, in accordance with Rule 52 of the Federal Rules of Civil Procedure.[4]

## BACKGROUND

LPCiminelli is a Delaware corporation with a principal place of business in Buffalo, New York. At all relevant times, LPCiminelli owned one-hundred percent of the stock of the Cowper Construction Company ("Cowper"), which was formed under the laws of Delaware in January 1996 to engage in the construction business in the Carolinas. Cowper was a member of a group of companies owned by LPCiminelli and consolidated for tax reporting purposes. SF ¶¶ 8-10.

Cowper ceased operations some time before December 31, 2003. The exact date is in dispute. Balance sheets reflect that by the end of 2003, Cowper held only $63 in cash; had no fixed assets; held no accounts receivable; and had an accounts payable balance in the amount of $3,495,977, consisting of subcontractor and vendor claims arising out of Cowper's construction projects. TE 1. Cowper began to incur these debts in 1997, and received the last invoice with respect to these debts in 2002. The $3,495,977 accounts payable balance remains unpaid. SF ¶¶ 11-12.

---

[4]Rule 52 states in relevant part:

> In an action tried on the facts without a jury . . . , the court must find the facts specially and state its conclusions of law separately. The findings and conclusions may be stated on the record after the close of evidence or may appear in an opinion or a memorandum of decision filed by the court. Judgment must be entered under Rule 58.

Fed. R. Civ. P. 52(a). While "punctilious detail" is not required, *In re Mazzeo*, 167 F.3d 139, 142 (2d Cir. 1999) (internal quotation marks omitted), the court must set forth its findings and conclusions sufficiently to permit meaningful appellate review. *See, e.g., United States v. Sasso*, 215 F.3d 283, 292 (2d Cir. 2000).

LPCiminelli reported Cowper as an active subsidiary on its Form 1120 consolidated federal corporate tax returns for tax years 2000-2003 (*see* TE 1, 4-7). On its consolidated federal corporate income tax return for tax year 2004, filed on September 12, 2005 (TE 3), LPCiminelli reported that Cowper was insolvent, inactive, and had negative equity as of December 31, 2003, and that LPCiminelli's retained earnings had been adjusted to reflect the removal of Cowper from the consolidated filings. *Id.* at Bates No. IRS00439; SF ¶ 16.

The IRS subsequently conducted an audit of LPCiminelli's 2004 tax return, which took place in late 2006 and early 2007. During the audit, plaintiff's counsel informed the auditors that Cowper had disposed of substantially all of its assets before tax year 2004 "within the meaning of the consolidated return regulations (Treas. Reg. §1.1502-19(c)(1)(iii)(A))." TE 10. Plaintiff's corporate representative also signed a Form 872 "Consent to Extend the Time to Assess Tax," dated November 15, 2006, by which plaintiff agreed to extend and leave open the statutes of limitations on tax years 2001-2003 so that any federal income tax due on plaintiff's returns for those years "may be assessed at any time on or before December 31, 2007." TE 11; SF ¶¶ 20-25.

On March 16, 2007, after completing the audit, the IRS issued a Form 5701 Notice of Proposed Adjustment directing LPCiminelli to include Cowper's $3,495,977 of unpaid accounts payable as cancellation of indebtedness ("COD") income for 2004. TE 13. On or about July 27, 2007, following notification from counsel that it disagreed with this conclusion (TE 12), LPCiminelli submitted an executed Form 5701 to the IRS tendering the amount of $1,188,632, plus interest of $219,537.16, as full payment of the additional tax assessed on income based on cancellation of Cowper's indebtedness. SF ¶¶ 26-28.

On or about August 4, 2008, LPCiminelli submitted a Form 1120X amended consolidated tax return seeking a refund of the $1,188,632,[5] plus interest. LPCiminelli asserted that it was entitled to a refund because, under the tax code and its implementing regulations, the COD income realized by Cowper should have been excluded from the consolidated taxpaying group's gross income to the extent of Cowper's insolvency. SF ¶¶ 29-30.

On March 25, 2009, having received no response to its refund demand, LPCiminelli filed this lawsuit. The government answered the complaint by generally asserting that the additional $1,188,632 was properly assessed as tax on COD income for tax year 2004. *See* Item 8. However, as reflected in the parties' submissions, the government now agrees with LPCiminelli that this additional tax was erroneously assessed on the basis of COD income. Instead, the government now contends that the assessment was proper as a tax on income arising from an excess loss account ("ELA") relating to Cowper, thereby offsetting the erroneous COD income tax assessment. SF ¶ 35. Plaintiff responds that the undisputed evidence shows that the ELA issue was addressed by LPCiminelli during the 2004 audit, and was pursued by the IRS, but the audit team concluded that LPCiminelli had not realized ELA income in 2004.

As previously mentioned, plaintiff has designated as trial evidence portions of the transcript of the deposition of IRS auditor David Throm, taken in this matter on December 15, 2009, and has identified as trial exhibits several emails, draft Notices of Proposed

---

[5] The total pre-interest amount sought by the amended return was $1,210,921, comprised of the $1,188,632 in tax assessed on COD income, plus $22,310 of renewal community employment credits ("RCE credits") that LPCiminelli did not claim on its original 2004 Form 1120. The government has issued a refund for the unclaimed RCE credits. *See* Trial Ex. 14.

-5-

Adjustment, and other documents pertaining to the facts considered and matters pursued by the audit team, which included Mr. Throm's supervisor Kathleen Oswald and IRS Attorney Matthew Root. By its motion *in limine*, the government seeks to preclude plaintiff from offering the designated deposition testimony of Mr. Throm, and to exclude as exhibits any documents or emails reflecting internal agency deliberations and conclusions regarding the audit. According to the government, any testimony or documentary evidence concerning the actions of IRS employees involved in the audit is of no relevance to the court in its role as the finder of fact as to the propriety of the tax assessment.

## **DISCUSSION**

**I.     Standard of Review/Motion *In Limine***

The court's analysis of the issues presented on the stipulated trial record, and raised by the government's pretrial motion *in limine*, begins with a discussion of the standard of review under 28 U.S.C. §1346(a)(1), which provides federal district courts original jurisdiction over:

> [a]ny civil action against the United States for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected, or any penalty claimed to have been collected without authority or any sum alleged to have been excessive or in any manner wrongfully collected under the internal revenue laws ….

In actions brought pursuant to this provision for a refund of taxes already paid to the government, the district court is required to review the determination and assessment of the entire tax liability *de novo*. *R.E. Dietz Corp. v. United States*, 939 F.2d 1, 4 (2d Cir. 1991) (citing *Ruth v. United States*, 823 F.2d 1091, 1094 (7th Cir. 1987)). The taxpayer bears the burden of persuading the court that the tax assessment upon which the refund

is sought was erroneous.  *Id.*; *see also United States v. Janis*, 428 U.S. 433, 440 (1976).  In this regard, "the notice of tax deficiency carries a presumption of correctness, requiring the taxpayer to demonstrate that the deficiency is incorrect."  *R.E. Dietz Corp.*, 939 F.2d at 4 (citing *Lesser v. United States*, 368 F.2d 306, 310 (2d Cir. 1966); *United States v. Lease*, 346 F.2d 696, 700 (2d Cir. 1965)).  To prevail, the taxpayer must

> … present substantial evidence as to the wrongfulness of the Commissioner's determination to meet the burden of going forward.  Even if this burden is met, the taxpayer still bears the burden of persuasion.  Thus, a plaintiff must both come forward with enough evidence to support a finding contrary to the Commissioner's determination and then still carry the ultimate burden of proof.

*Gudmundsson v. United States*, 665 F. Supp. 2d 227, 229 (W.D.N.Y. 2009) (quoting *Gourley v. United States*, 2009 WL 2700206, at *4 (Fed.Cl. Aug. 26, 2009) (citations and quotation marks omitted)), *aff'd*, 634 F.3d 212 (2d Cir. 2011).

The case law is clear that, in conducting its *de novo* review of the tax assessment, "the court does not sit in judgment of the Commissioner; the court places itself in the shoes of the Commissioner."  *National Right to Work Legal Def. & Educ. Found. v. United States*, 487 F. Supp. 801, 805 (E.D.N.C. 1979).  Thus, "[t]he factual and legal analysis employed by the Commissioner is of no consequence to the district court."  *R.E. Dietz Corp.*, 939 F.2d at 4; *see also Ruth*, 823 F.2d at 1094 ("In general, courts will not look behind an assessment to evaluate the procedure and evidence used in making the assessment.").  In deference to this standard, trial courts called upon to conduct *de novo* review of the Commissioner's assessment of tax liability have declined, on relevance grounds, to consider evidence regarding IRS agents' underlying opinions, impressions, conclusions, and reasoning for their administrative determinations.  *Politte v. United States*, 2012 WL

965996, at *7 & n 8 (S.D.Cal. Mar. 2012) (citing cases); *see also Armtek Corporation v. United States*, 1996 WL 469015, at *1-*2 (W.D.N.Y. June 20, 1996) (portions of IRS agent's audit examination report protected from disclosure by intra-governmental deliberative process privilege, based in part on the "compelling argument that the opinions, recommendations and legal analyses of the IRS are not relevant to the determination of the proper refund since the court must undergo a de novo review.").

Notwithstanding the somewhat unique circumstances presented in this case, in which the government revised its tax assessment rationale following the commencement of discovery, the court nonetheless finds itself constrained by the authorities cited above to hold that the factual considerations and legal analysis employed by the audit team during their examination of LPCiminelli's consolidated tax returns, and in their proposed adjustments to the Commissioner's tax assessment, must be deemed to be "of no consequence" to the *de novo* review required in this refund action brought under section 1346(a)(1). *R.E. Dietz Corp.*, 939 F.2d at 4. As a result, the court declines to consider Mr. Throm's deposition testimony, the draft Notices of Proposed Adjustment, and the email correspondence among audit team members, submitted as Volume III to the stipulated trial record, as evidence in the case.

Accordingly, the question for the court to determine on *de novo* review is whether the evidence in Volumes I and II of the stipulated trial record is sufficient to overcome the presumption of correctness to be accorded the Commissioner's assessment of $1.2 million as a tax on LPCiminelli's income arising from an excess loss account relating to Cowper.

## II. Excess Loss Account

Under the applicable Internal Revenue Code provisions and Treasury Regulations, an affiliated group of corporations has the "privilege" to file a consolidated income tax return, in lieu of separate returns, for each taxable year. See 26 U.S.C. §1501; Treas. Reg (26 C.F.R.) §1.1501, *et seq*. As explained in pertinent decisions of the Tax Court, whose expertise is entitled to deference, *see, e.g., LaBow v. Comm'r of Internal Revenue*, 763 F.2d 125, 130 (2d Cir. 1985) (in an area of law where Tax Court expertise may be useful in explication, courts "ordinarily give that expertise deference"):

> Under the prescribed regulations, the current earnings or losses of each member of the consolidated group enter into the computation of consolidated income [Treas. Reg. §1.1502-11]. The losses of one affiliate may offset the profits of another and thus serve to reduce or eliminate consolidated income. Losses of a subsidiary may be utilized in this matter without limitation, even if the amount of utilized losses exceeds the group's basis in the affiliate's stock. As a result, the group's tax liability may be distorted since the tax losses may exceed the economic losses. This distortion is eliminated, however, through the vehicle of compensating adjustments to the group's basis in the affiliate's stock.
> 
> …
> 
> The adjustments are of two kinds – positive and negative. Generally, the subsidiary's undistributed earnings and profits, which contribute to consolidated income, necessitate a positive adjustment which increases the group's basis in the stock. Losses of the subsidiary used to reduce the group's consolidated income require negative adjustments which decrease the group's basis in that stock. The adjustments are netted at the end of each taxable year. If the net negative adjustments exceed the group's basis in the stock, an "excess loss account" – a negative basis for the stock – results. [Treas. Reg. §1.1502-32(e)(1)].

*Covil Insulation Co. Inc. v. Comm'r of Internal Revenue*, 65 T.C. 364, 370-71 (1975).

> To summarize the above basis adjustment rules …, an affiliated group of corporations that files a consolidated Federal income tax return is able to reduce its consolidated taxable income each year by deducting tax losses of a subsidiary that are in excess of the group's true economic losses (*i.e.*, in

excess of the amount invested in the subsidiary). If the losses are temporary and if the subsidiary has sufficient undistributed earnings and profits in later years, the balance in the excess loss account may be eliminated. Where however, the parent disposes of the stock in the subsidiary before the subsidiary's economic turnaround, the balance in the excess loss account immediately before the disposition event occurred is treated as the equivalent of an "amount realized" by the parent (because the parent was allowed to reduce consolidated taxable income by that amount even though the losses exceeded the parent's adjusted basis in the subsidiary). Accordingly, in that situation the balance in the excess loss account is to be included in the parent's consolidated taxable income.

*Wyman-Gordon Co., Rome Industries, Inc. v. Commissioner of Internal Revenue*, 89 T.C. 207, 215 (1987).

Thus, when all of the affiliated subsidiary's stock is "disposed of," the members of the affiliated group owning the stock are required to include the balance of the ELA as taxable income. *Covil Insulation*, 65 T.C. at 371-72 (citing Treas. Reg. §1.1502-19(a)(1)).[6] "Disposition" of a subsidiary's stock is treated under the regulations as occurring: (1) at the time the parent company "transfers or otherwise ceases to own" the stock, or takes into account gain or loss related to the stock (Treas. Reg. §1.1502-19(c)(1)(i)); (2) at the time of "deconsolidation," *i.e.*, when the parent or subsidiary becomes a "nonmember" of the affiliated group (Treas. Reg. §1.1502-19(c)(1)(ii)); or (3) at the time the stock becomes "worthless," *i.e.*, when substantially all of the assets of the subsidiary are disposed of or a

---

[6]Treas. Reg. §1.1502-19(a)(1), in effect during 2004, provided:

**(a) In general.**

*(1) Purpose.* This section provides rules for a member (P) to include in income its excess loss account in the stock of another member (S). The purpose of the excess loss account is to recapture in consolidated taxable income P's negative adjustments with respect to S's stock (e.g., under § 1.1502–32 from S's deductions, losses, and distributions), to the extent the negative adjustments exceed P's basis in the stock.

debt of the subsidiary is discharged and not included in gross income (Treas. Reg. §1.1502-19(c)(1)(iii)). "The term 'disposed of' or 'disposition' is given a rather broad meaning. … With exceptions not here relevant, a member is considered to have disposed of all its shares in the subsidiary on the last day of its taxable year in which, among other situations, the subsidiary's stock is wholly worthless." *Covil Insulation*, 65 T.C. at 372-73 (citing Treas. Reg. §1.1502-19(b)(2)).

As revealed by this brief review of the Tax Court decisions and regulatory language, analysis of a parent company's consolidated taxable income by inclusion of an affiliate's ELA can be a very complicated matter, even for tax experts. In this case, however, the parties agree – and the record reveals – that LPCiminelli did not sell or otherwise cease to own the shares of Cowper's stock within the meaning of §1.1502-19(c)(1)(i) of the Treasury Regulations, nor did a "deconsolidation" occur within the meaning of §1.1502-19(c)(1)(ii). In recognition of this, the parties have distilled the issues and material facts into a relatively understandable framework, and have narrowed the question to be determined by the court to the following relevant inquiry under §1.1502-19(c)(1)(iii): In what taxable year did Cowper's stock become worthless?

Plaintiff contends that the evidence in the stipulated trial record establishes that substantially all of Cowper's assets were disposed of, and its stock became worthless, well before tax year 2004 – *i.e.*, in a year now foreclosed from tax assessment liability by the tax code's statute of limitations. *See* 26 U.S.C. §6501(a) (tax must be assessed within 3 years after return was filed). The government argues that Cowper's stock became worthless in tax year 2004, when LPCiminelli first reported on its 2004 federal income tax return that Cowper was considered an inactive subsidiary and had been removed from the

consolidated filings; that Cowper still had substantial assets on hand as of December 31, 2003; and that even if plaintiff had disposed of substantially all of its assets prior to tax year 2004, the assessment was proper as a tax on income arising from Cowper's ELA under the "anti-avoidance rule" of the consolidated federal income tax return regulations.

### A. Worthlessness

"Worthlessness is a factual question …," *Austin Co. v. Comm'r of Internal Revenue*, 71 T.C. 955, 969 (1979), and the Tax Court decisions have placed the burden of proof on the taxpayer to overcome the presumption of correctness accorded the government's determination by showing "a relevant identifiable event in [the affiliate]'s corporate life which clearly evidences destruction of both the potential and liquidating value of the stock." *Id.* at 970. Upon careful review of the stipulated trial record, the court finds that plaintiff has satisfied this burden by a clear preponderance of the evidence.

As stipulated to by the parties, TE 1, which was prepared by the IRS connection with the audit of LPCiminelli's 2004 tax return, provides an accurate summary of Cowper's assets, liabilities, income, and expenses during the period from 1999 through 2003. The information in this summary was derived from LPCiminelli's consolidated tax returns for the years 2000-2004, submitted to the record as TE 4-7. The parties have further stipulated that TE 2, which is a copy of an "Account Report" from LPCiminelli's general ledger system, accurately reports the assets and liabilities of Cowper as of December 31, 2004. *See* TRS ¶ 2. As these documents reveal, Cowper held significant assets during the period from 1999 through 2002, but substantially all of those assets were disposed of before 2004.

For example, at the end of tax year 1999, Cowper reported total assets of more than $8.2 million; at the end of 2000, Cowper's total assets were $1,875,511; at the end of 2001, total assets were $824,773; at the end of 2002, total assets were negative $220,777; and at the end of 2003, total assets were reported as $4,128, consisting of $63.00 in cash, plus the difference between $29,765 in prepaid state income taxes and $25,700 in deferred federal income tax ($29,765 - $25,700 + $63 = $4,128). TE 1. During 2004, Cowper's cash declined from $63 to zero due to bank charges, and by the end of 2004, Cowper held no cash, owned no fixed assets, and had no accounts receivable. TRS ¶ 2; TE 2-3.

For its part, the government contends that the amount of $25,700 reported by Cowper as an accrued federal tax expense should be considered as a liability, not as a negative on the asset side of the ledger, for purposes of determining whether a corporation has disposed of substantially all of its assets; and, as a result, the amount of $29,765 in prepaid state income taxes should be considered as a substantial asset for the purpose of the "worthlessness" analysis under Treas. Reg. §1.1502-19(c)(1)(iii). The government has directed the court's attention to the current version of §1.1502-19(c)(1)(iii), amended effective October 20, 2008, which now provides that the subsidiary's stock becomes worthless "[a]t the time … [a]ll of [the subsidiary]'s assets (other than its corporate charter and those assets, if any, necessary to satisfy state law minimum capital requirements to maintain corporate existence) are treated as disposed of , abandoned, or destroyed for Federal income tax purposes …." Treas. Reg. §1.1502-19(c)(1)(iii)(A) (2012); *see also Dudderar v. Comm'r Internal Revenue*, 44 T.C. 632, 637-38 (1965) (the words "substantially all" as used in tax code provision dealing with deduction of interest on

amounts borrowed to pay insurance premiums "must be given their ordinary meaning of all but a small negligible amount.").

However, as plaintiff points out, even considering the full amount of $29,765 in prepaid state income taxes as an asset on Cowper's books at the end of 2003, Cowper still disposed of $8,197,123, or 99.64% of its assets, between the end of 1999 and the end of 2003. By any measure, this must be considered to be disposition of "substantially all" of Cowper's assets for the purpose of determining when Cowper's stock became worthless within the meaning of the applicable version of Treas. Reg. §1.1502-19(c)(1)(iii).

Accordingly, the court finds by a preponderance of the evidence presented on the stipulated trial record that, as of December 31, 2003, Cowper held only $63 in cash, owned no fixed assets, and held no accounts receivable, constituting disposition of substantially all of its assets and rendering its stock worthless during a tax year foreclosed from tax assessment liability by the tax code's statute of limitations.

### B. The Anti-Avoidance Rule

The government also contends that even if plaintiff had disposed of substantially all of its assets prior to December 31, 2003, the ELA is properly included in tax year 2004 under the "anti-avoidance rule" of the consolidated return regulations, which provides:

> If any person acts with a principal purpose contrary to the purposes of this section, to avoid the effect of the rules of this section or apply the rules of this section to avoid the effect of any other provision of the consolidated return regulations, adjustments must be made as necessary to carry out the purpose of this section.

Treas. Reg. §1.1502-19(e); Item 61-1, p. 5 of 12. According to the government, LPCiminelli acted with the purpose of avoiding the regulations by not reporting Cowper as

an inactive subsidiary prior filing its consolidated return for tax year 2004, and by failing to file an amended return for the year (or years) during which the income from Cowper's ELA was actually realized.

Treas. Reg. §1.451-1 provides, in relevant part:

**General rule for taxable year of inclusion.**

**(a) General rule.** Gains, profits, and income are to be included in gross income for the taxable year in which they are actually or constructively received by the taxpayer unless includible for a different year in accordance with the taxpayer's method of accounting. … If a taxpayer ascertains that an item should have been included in gross income in a prior taxable year, he should, if within the period of limitation, file an amended return and pay any additional tax due. …

There is case law support for plaintiff's argument that there is nothing in the wording of this regulation, or in the language of the tax code itself, explicitly requiring the taxpayer to file an amended return. *See Badaracco v. Comm'r*, 464 U.S. 386, 393 (1984) ("[T]he Internal Revenue Code does not explicitly provide either for a taxpayer's filing, or for the Commissioner's acceptance, of an amended return; instead, an amended return is a creature of administrative origin and grace." (*citing Hillsboro National Bank v. Commissioner*, 460 U.S. 370, 378-380, n.10 (1983)); *see also Broadhead v. Comm'r*, T.C. Memo1955-328, 1995 WL 769 (Tax Ct. 1955) (taxpayer not required by statute to file an amended return).

Moreover, based on the undisputed evidence in the stipulated trial record, it is clear to the court that LPCiminelli at no time acted with a principal purpose contrary to the purposes of Treas. Reg. §1.1502-19, or otherwise acted in a manner designed to avoid any provision of the consolidated return regulations. To the contrary, the record reveals that

LPCiminelli fully disclosed Cowper's assets, and the disposition of those assets, on its consolidated returns for years 2000-2003. TE 4-7. LPCiminelli's counsel informed the IRS during its audit of the company's 2004 tax return that Cowper had disposed of substantially all of its assets, within the meaning of the ELA provision of the consolidated return regulations, prior to tax year 2004. *See* TE 10. Counsel also agreed to extend the statutes of limitations on tax years 2001 through 2003 so that the IRS could fully examine whether LPCiminelli had realized income from a Cowper ELA during those years. While the limitations periods on 2001-2003 were open, the IRS examined the matter and chose not to assess tax based on any realized ELA income. Instead, the IRS directed Ciminelli to pay tax on COD income for tax year 2004. *See* TE 13.

Based on these undisputed facts, the court finds no rational basis for concluding that LPCiminelli at any time acted in a manner which could be deemed contrary to, or designed to avoid the purpose or effect of, the consolidated return regulations. Accordingly, Cowper's ELA is not subject to inclusion under the anti-avoidance rule of Treas. Reg. §1.1502-19(e).

## **CONCLUSION**

For the reasons discussed above, the court finds that the evidence in Volumes I and II of the stipulated trial record is sufficient to overcome the presumption of correctness to be accorded the Commissioner's assessment of tax on LPCiminelli's income arising from an excess loss account relating to Cowper. Accordingly, LPCiminelli is entitled to a refund of its full tax overpayment for tax year 2004, plus interest, in an amount to be determined upon stipulation of the parties, or if necessary, further proceedings.

The foregoing constitutes the court's findings of fact and conclusions of law on the stipulated trial record, in accordance with Fed. R. Civ. P. 52(a).

So ordered.

    \s\ John T. Curtin
JOHN T. CURTIN
United States District Judge

Dated: November 13, 2012
p:\pending\2009\09-274.sept28.2012